IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: The Appeal of the Borough of   :
Renovo and Code Inspections, Inc.,   :
Finding of 14th Street, Renovo,   :
Pennsylvania   :
  : No. 1352 C.D. 2020
Appeal of: Dawn Pagnotto, Heather   : Submitted: December 3, 2021
Wadsworth Bixler, Teresa Casper,   :
Marlin Horst, Nancy Moriarity,   :
Michael Hand, Brenda Hand, Ryan   :
Mooney, and Janean Mace   :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                     FILED: May 27, 2022

Dawn Pagnotto, Heather Wadsworth Bixler, Teresa Casper, Marlin Horst, Nancy Moriarity, Michael Hand, Brenda Hand, Ryan Mooney, and Janean Mace (collectively, Owners) appeal the October 13, 2020 order of the Clinton County Court of Common Pleas (trial court) that affirmed the February 5, 2020 order of the Borough of Renovo (Borough) Board of Appeals (Board). The Board's order denied Owners' appeals of the Borough's September 16, 2019 Notices of Unsafe Structures (Notices) that were issued to Owners by the Borough's Code Officer, Vincent Marquardt (Code Officer). The Notices informed each Owner of residential property (Property) in a 16-unit building (Building), located at 133-163 14th Street in the Borough, that their Property was in violation of the 2015 International

Property Maintenance Code (IPMC)[1] due to deterioration, damage and decay within the Building.  After careful review, we affirm.

The relevant facts, which are not in dispute, were summarized by the Board and trial court as follows.  This action concerns a 16-unit building located on 14th Street in the Borough.  The Code Officer provided each unit Owner with a Notice dated September 16, 2019, in which "the Borough determined the sixteen (16)[-]unit building, and by extension the individual residences, to be unsafe structures."  Trial Court 10/13/20 Opinion at 1.  Various Property owners appealed the Borough's Notices to the Board, and the Board convened a hearing on November 20, 2019, during which Owners and the Borough agreed to continue the hearing until January 15, 2020, and January 16, 2020.[2]  Board 2/5/20 Opinion at 1.  Owners' counsel and the Borough Solicitor agreed to continue the hearing to allow the Borough, through its Code Officer, to provide Owners "with a letter indicating the needed repairs to remedy the alleged unsafe situation concerning the [B]uilding, provide a copy of the Report of the Borough's Structural Engineer to [Owners' counsel], and to allow [Owners] to retain, if they desired, an expert." *Id.*

---

[1] Borough of Renovo, Pa., Code of Ordinances, enacted July 17, 2017, *as amended.*  In §5-201 of the Code of Ordinances, the Borough adopted the current IPMC as its property management code.  The relevant sections of the IPMC are included in the Reproduced Record (R.R.) at 164a-67a.  Pa. R.A.P. 2173 states:  "Except as provided in Rule 2174 (tables of contents and citations), the pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures and not in Roman numerals: thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc."  Although the pagination of Owners' Reproduced Record does not conform to the foregoing Rule, we will cite to the relevant pages as required by the Rule.

[2] After filing their appeals, Property owners Tim Teague and April Scott withdrew from the matter, and they are no longer parties to this appeal.

At the January 15, 2020 Board hearing, the parties stipulated that Owners received the Notices,[3] the Report of the Borough's Structural Engineer, Jeffrey Brooks (Borough Engineer), dated November 25, 2019 (Borough Engineer's Report)[4] and the Code Officer's follow-up letter dated November 26, 2019, addressing the "abatement of the alleged problems causing the [Building] to be considered unsafe by the Borough." Board 2/5/20 Opinion at 2, 9. At that hearing, the Borough presented testimony of its Code Officer, who testified that he "posted" the Properties as unsafe "because of the conditions of the property at 155 [14th] Street." *Id.* The Code Officer testified that the "interior of that unit or the majority of it had collapsed." *Id.* The Code Officer believed that "because of the type of construction, the rest of the units were 'in jeopardy.'" *Id.* The Code Officer explained that the individual Properties, although owned separately, "were not designed and constructed as individual units. [Rather, t]he [B]uilding was constructed entirely as one building" with each unit "having a common wall." *Id.* The Code Officer further explained that "the floor joists" in each Property "were secured by pockets in the brick." *Id.*

The Code Officer further testified that all Notices sent to the Property Owners were identical, except the Notice sent to the owner of 155 14th Street indicated the Property was in "'imminent danger.'" Board 2/5/20 Opinion at 2. The Code Officer testified that of the 16 units in the Building, he was able to enter and

---

[3] The Notice, addressed to Thomas Pagnotto at 133 14th Street in the Borough may be found in the Reproduced Record at 59a-60a. The parties agreed that each Owner received the same notice on the same date, addressed individually to each Owner.

[4] The Borough Engineer's Report may be found in the Reproduced Record at 61a-83a. The Borough Engineer submitted various photographs of the Building and Properties with his Report, and Owners also submitted photographs of various Properties, which may be found in the Reproduced Record at 84a-163a.

inspect 6 units, and of the 16 units, only 4 were occupied. *Id.* at 3. The Code Officer further testified that he posted a Notice on each Property, and that neither he nor the Borough did any repair work on the premises and did not close the sidewalks. *Id.* The Code Officer further testified that repairs to the Property at 155 14th Street would be subject to additional requirements because the area was in a floodplain as designated by the Federal Emergency Management Agency (FEMA). *Id.* The Code Officer testified that if repairs to that Property, or any of the other individual units, amounted to more than 50% of the fair market value of each Property, then the Building would have to come into complete compliance with federal floodplain requirements. *Id.* The Code Officer further testified that 6 of the 16 Properties in the Building are on the County Tax Repository list, which occurred after the owners failed to pay property taxes due, and the Properties failed to secure any buyers at a sheriff's sale. *Id.*

At the January 15, 2020 Board hearing, the Borough also presented the testimony of the Borough Engineer. The Borough Engineer testified that he has worked as a structural engineer since 1990, working on both residential and commercial design projects, he is licensed and registered in the Commonwealth, with a bachelor's degree in structural engineering from the Pennsylvania State University, and an associate's degree in architectural engineering from the Pennsylvania State University. He testified that he has provided expert testimony in between 60 to 70 cases, in both administrative and court proceedings. Board 2/5/20 Opinion at 3-4. The parties agreed to accept the Borough Engineer as an expert in structural engineering. *Id.* at 4. The Borough Engineer testified that he inspected and measured the outside of the Building and took photos. He and the Code Officer performed inspections inside some, but not all, of the Properties in the Building,

4

because they were not able to gain access to some of the Properties. He described the inside of the Property at 155 14th Street as collapsed, that is, "the second floor, third floor and roof had collapsed down inside to the first floor area." *Id.* He further testified that the Building was built as one structure with separate units, none of which were free-standing. The Borough Engineer testified that

> [t]he brick wall between each unit served as a fire wall and also vertical support for floor joists and roof rafters. The joists and rafters were pocketed into the fire wall, that is, they did not actually go through the wall. When the second and third floor joists and a portion of the roof collapsed [in the Property at 155 14th Street], that caused the fire wall to be potentially unstable.

*Id.*

The Borough Engineer further explained that "when the floor joists are missing on one side or the other, the fire wall can actually fail by pushing into that open space. This could cause what is called a 'progressive' collapse, that other walls would become unsteady and fail." Board 2/5/20 Opinion at 4. The Borough Engineer then showed photographs of the interior of the Property at 155 14th Street, which were admitted into the record. He opined that "because of the way the structure was built with the loss of structural integrity in one unit, such loss could have a potential 'catastrophic' effect on the remainder of the units." *Id.* at 5. He also opined that condemnation of the Building was appropriate, and that his opinions were expressed to a reasonable degree of engineering certainty. *Id.*

The Borough Engineer further testified that he had concerns about the Property at 137 14th Street, where there had been a fire. He inspected the interior of that Property, where he observed "holes in the roof, rain coming in, soaking the structure," which caused deterioration and rot that "ultimately, could result in the same type of collapse that occurred in [the Property at] 155 [14th] Street." Board

5

2/5/20 Opinion at 5. He also observed charred debris, a missing ceiling in the attic space, and the "charred remains of roof rafters" in that Property. *Id.* at 6. The Borough Engineer further opined that the Borough acted appropriately in posting the Properties in the Building "because of the danger of a progressive collapse," which he believed would occur "'inward' and not 'outward[.]'" *Id.* He also testified that, because the Building is located in the flood fringe area, FEMA regulations would complicate any repairs. The Borough Engineer testified that if more than 50% of the Property's value is repaired, then it must be brought up to current FEMA regulations, which would require any habitable space to be "at least a foot[-]and[-]a[-]half above the 100-year flood level," which he surveyed and opined would be about "five (5) feet above the first floor." *Id.* In his opinion, this would then require elevating the entire Building, or abandoning the first floor and moving all livable space to the second and third floors of each Property. *Id.* at 5-6.

The Borough Engineer further testified about his examination of the interiors of the Properties located at 135, 139, 141, 153, and 157 14th Street. In the Property at 135 14th Street, he observed significant water damage to the first floor, caused by the fire in the adjacent Property at 137 14th Street. Board 2/5/20 Opinion at 6. In the Property at 139 14th Street, he observed roof damage from the fire in the adjacent unit, debris, dog feces, missing windows, and several fallen ceilings. R.R. at 69a. In the Property at 141 14th Street, he testified that he was permitted to inspect the interior of the Property but was not permitted to take photographs. *Id.* The Borough Engineer testified that he observed no structural damage in that Property, but because of the lack of smoke detectors the Property was unlivable. *Id.* In the Property at 153 14th Street, the Borough Engineer observed that extensive interior renovations had been started, but not completed, and that the Property lacked smoke

detectors, and was not livable as it currently exists. *Id.* In the Property at 157 14th Street, he observed missing or fallen ceilings and other problems with habitability. *Id.*

On cross-examination, the Borough Engineer opined that a collapse in the Building "would not be a local failure" of a particular Property, but would be "an overall failure." Board 2/5/20 Opinion at 6. He testified that the interior walls between each Property were "'double bricked.'" *Id.* The Borough Engineer stated that he was unable to get a sight distance to observe whether the interior walls of the Property at 155 14th Street had begun to bow. *Id.* at 7. On re-direct examination, the Borough Engineer opined that the fact that the interior walls of the Property at 155 14th Street were not bowing "did not change his opinion as to the lack of structural safety" for the Building as a whole. *Id.* In answer to a question from a Board member, the Borough Engineer opined that if corrections were made to the Property at 155 14th Street to stabilize the wall, it would "'buy some time,'" but the same problem would eventually occur at the Property at 137 14th Street because of the fire and water damage throughout. *Id.*

At the January 16, 2020 Board hearing, Owners presented the testimony of Matthew McDonald, who lives with his girlfriend Teresa Casper, the owner of the Property at 143 14th Street, although neither of them currently lived in that Property. He testified that he worked as an independent contractor doing residential construction for approximately 10 years when he was younger, and that he also had fabrication and welding experience. Board 2/5/20 Opinion at 7. Over the Borough's objection, the Board qualified Mr. McDonald as an expert in residential construction (Owners' expert). *Id.* at 8. Owners' expert testified that he took measurements of the Properties at 143 and 145 14th Street, that he observed "three (3) rows of brick

7

on the interior wall" of the Property at 145 14th Street, and that he could see no "structural issues" in that Property. *Id.* Owners' expert opined that there could "potentially be a wall anchor system put in place which draws a wall back in, placing plates and pins in it." *Id.* Owners' expert further opined that the Borough was harassing residents in the Building, and had engaged in selective enforcement of the IPMC. *Id.* at 8-9.

At the January 16, 2020 Board hearing, the Borough presented the testimony of the Borough Engineer on rebuttal. The Borough Engineer testified that his opinion regarding the structural safety of the Building "would be unchanged whether the interior walls were two (2) or three (3) brick[s] thick." Board 2/5/20 Opinion at 9. He opined that the number of bricks would have no relevance to the situation "because of the unbraced heights and lack of tie between the joists and the walls." *Id.*

When testimony was completed at the January 16, 2020 Board hearing, the parties stipulated that the 2015 IPMC, as adopted through the Borough Code of Ordinances, applied to this case. The parties also stipulated that Owners received the Notices, including the Borough Engineer's Report and the follow-up letter from the Code Officer, which provided information concerning the necessary repairs. Board 2/5/20 Opinion at 9. Owners argued that the Notices contained insufficient information per Section 107.2 of the IPMC.[5] Owners also argued that Section 109

---

[5] Section 107.2 of the IPMC requires that the code official provide notice of a property code violation to a property owner that is in accordance with all of the following:

1.      Be in writing.

2.      Include a description of the real estate sufficient for identification.

**(Footnote continued on next page…)**

8

of the IPMC[6] required the Borough to take action to repair the Property at 155 14th Street due to the emergency designation. *Id.* at 9-10. The Borough responded that the Notices contained the information required by Section 107.2 of the IPMC, and that Section 109.2 of the IPMC did not require the Borough to repair the Property at

> 3.  Include a statement of the violation or violations and why the notice is being issued.
>
> 4.  Include a correction order allowing a reasonable time to make the repairs and improvements required to bring the *dwelling unit* or structure into compliance with the provisions of the code.
>
> 5.  Inform the property *owner* or owner's authorized agent of the right to appeal.
>
> 6.  Include a statement of the right to file a lien in accordance with Section 106.3.

R.R. at 164a (emphasis in original).

[6] In relevant part, Section 109.1 of the IPMC authorizes the code official to post an unsafe structure notice on a property when, in the code official's opinion, "there is *imminent danger* of failure or collapse of a building or structure that endangers life, or when any structure or part of a structure has fallen and life is endangered by the occupation of the structure. . . ." (Emphasis in original.)

Section 109.2 of the IPMC governs temporary safeguards for a property posted as an unsafe structure and provides:

> Notwithstanding other provisions of this code, whenever, in the opinion of the *code official*, there is *imminent danger* due to an unsafe condition, the *code official* shall order the necessary work to be done, including the boarding up of openings, to render such structure temporarily safe . . . and shall cause such other action to be taken as the *code official* deems necessary to meet such emergency.

R.R. at 166a (emphasis in original). In addition, Section 109.4 of the IPMC governs emergency repairs and states: "For the purposes of this section, the *code official* shall employ the necessary labor and materials to perform the required work as expeditiously as possible." *Id.* (Emphasis in original.)

9

155 14th Street, as the language of the IPMC had been interpreted in *South End Enterprises, Inc. v. City of York*, 913 A.2d 354 (Pa. Cmwlth. 2006), *affirmed*, 947 A.2d 194 (Pa. 2008). Board 2/5/20 Opinion at 10.

The Board deliberated and then presented its findings in public. The Board determined that Owners "were located in individual units within one (1) building/structure." Board 2/5/20 Opinion at 10. The Board found that Owners received the Notices, as stipulated to by the parties, which included the Borough Engineer's Report and the Code Officer's follow-up letter. *Id.* The Board reviewed Section 107.2 of the IPMC, and determined that the Notices complied with Section 107.2 of the IPMC in the following respects: (1) the Notices were in writing; (2) they contained a description of the real estate sufficient for identification; (3) they included a statement of violations and the reason for the Notices; (4) they included, by way of the Borough Engineer's Report and the Code Officer's follow-up letter, a correction order; and (5) they informed Owners of their right to appeal. *Id.* The Board further found that although the Notices did not include a statement of the right to file a lien, as required by Section 107.2(6) of the IPMC, this omission did not substantially prejudice Owners. *Id.* at 11.

The Board also reviewed the Notice posted at the Property at 155 14th Street, which, unlike the other Notices, referenced "imminent danger." Board 2/5/20 Opinion at 11. The Board evaluated Section 109.2 of the IPMC, which states that the code official "shall" order necessary work to be done to render the structure temporarily safe. *Id.* The Board considered *South End Enterprises, Inc.*, 913 A.2d at 360, which reviewed the code official's determination that the property was in imminent danger of collapse, and determined that the word "shall" contained in the city ordinance did not require the city to make repairs to the unsafe property, but

10

instead gave discretion to the code official to determine what measures should be taken to render the property temporarily safe. "Accordingly, the Board determined that the Borough was not mandated to make repairs to the [Property at 155 14th Street]." Board 2/5/20 Opinion at 11.

The Board then considered the substantive issues and determined that the Borough met its burden of proof that the Properties were in violation of the IPMC, rendering them unsafe. Board 2/5/20 Opinion at 11-12. The Board "considered the testimony of the Borough[] [Engineer] and determined that [the Borough] had met its burden, while the evidence submitted by [Owners] did not present sufficient rebuttal to cause the Board to reject the [Borough Engineer's] testimony or [the Borough Engineer's Report]." *Id.* at 12. The Board then voted to deny Owners' appeals of their Notices and authorized the Borough Solicitor to prepare a written decision consistent with its deliberations. *Id.*

Owners appealed the Board's decision to the trial court, which reviewed the record and transcripts from the Board hearings, heard argument on October 6, 2020, and took no additional evidence. Trial Court 10/13/20 Opinion at 3. The trial court's scope of review was limited to determining whether the Board abused its discretion, committed an error of law, or made findings not supported by substantial evidence, citing *A.J. Grosek and Associates v. Zoning Hearing Board of Montrose Borough*, 450 A.2d 263 (Pa. Cmwlth. 1982). Trial Court 10/13/20 Opinion at 3. Owners presented three issues to the trial court, arguing that: (1) the Borough's Notice failed to satisfy the requirements of Section 107.2 of the IPMC because the description of the violations and corrective action were too vague; (2) Section 109.2 of the IPMC required the Borough to order and initially fund the necessary repair work to make the Building safe; and (3) the Code Official and Borough Engineer's

11

inspection was deficient because they failed to inspect the interior of every Property in the Building. Trial Court 10/13/20 Opinion at 2.

As to the first issue, the trial court determined that the Notice complied with Section 107.2 of the IPMC because it was in writing, identified the Properties by address and parcel number, and contained an adequate "statement of the violation or violations and explain[ed] why the Notice was issued." Trial Court 10/13/20 Opinion at 4-5. The trial court quoted from the Notice as follows:

> **NATURE OF VIOLATION:** The [B]uilding, (most notable, but not limited to the [P]roperty at 155 14th Street) is deteriorated, decayed, and has begun to collapse, making it unsafe under **Section: 108.1.1 (Unsafe Structures)** of the [IPMC]. The previously mentioned section states that "An Unsafe Structure is one that is found to be dangerous to the life, health, property or safety of the public or the occupants of the structure by not providing minimum safeguards to protect or warn occupants in the event of fire, or because such structure contains unsafe equipment or is so damaged, decayed, dilapidated, structurally unsafe or of such faulty construction or unstable foundation, that partial or complete collapse is possible."

*Id.*, R.R. at 59a. Based on this review, the Court determined that the Notices specifically stated that the Building is "deteriorated, decayed, and has begun to collapse, making it unsafe" under Section 108.1.1 of the IPMC. Trial Court 10/13/20 Opinion at 5. The Court also determined that the Notices provided Owners with 20 days to vacate or correct the violations and advised Owners of their right to appeal, as further required by Section 107.2 of the IPMC. *Id.*, R.R. at 164a.

The Notices also specified that the following corrective measures shall be taken before the Building could be occupied: "All decayed, and damaged structural members must be removed, and or replaced, and the structure inspected

12

by the issuing officer." R.R. at 164a. Although Owners argued that the Notices failed to adequately describe the violations and direct a specific course of action, the trial court determined that any "perceived deficiencies" were addressed and corrected with the parties' agreement that the Notices would be supplemented with the Borough Engineer's Report and the Code Officer's follow-up letter, of which Owners acknowledged receipt. Trial Court 10/13/20 Opinion at 5-6. The trial court concluded that "[t]hese two documents, when taken together, clearly satisfy the notice requirements of Section 107.2 of the [IPMC]." *Id.* at 6.[7]

As to the second issue, Owners argued that Section 109.2 of the IPMC mandates the Code Officer to order the necessary work to be done, employ the necessary labor and materials, and perform the work required as expeditiously as possible. The trial court reviewed Sections 109.2 and 109.4 of the IPMC, and determined that, although the IPMC contains the word "shall," the Borough was not required to employ labor and materials or perform the necessary work itself, or at its expense, based on this Court's holding in *South End Enterprises, Inc.*, 913 A.2d at 360. The trial court found that *South End Enterprises, Inc.* was directly applicable to Owners' appeal, because here, as in *South End Enterprises, Inc.*, the Code Officer "exercised his discretion to meet the emergency by eliminating access to the danger [B]uilding. Once the [] Code Officer has exercised his discretion to act in this particular way, this [c]ourt is not permitted to revisit that decision through this

---

[7] Owners argued that the Notices failed to comply with Section 107.2 of the IPMC because they failed to adequately describe the violations and failed to provide Owners with specific corrective actions. Owners did not argue, and the trial court did not address, whether the Board erred when it determined that the omission of the "statement of the right to file a lien," as required by Section 107.2(6) of the IPMC, did not prejudice Owners. *See* R.R. at 168a-74a. Therefore, we need not address that issue in this appeal.

13

action," citing *Anderson v. City of Philadelphia*, 36 A.2d 442 (Pa. 1944). Trial Court 10/13/20 Opinion at 7.

The trial court reasoned that Section 109 of the IPMC does not say how a code official should make the structure temporarily safe, and that the nature of the emergency would determine what steps should be taken. Trial Court 10/13/20 Opinion at 7. The trial court determined that the Borough is permitted to "exercise judgment and discretion in developing the appropriate response." *Id.* The trial court found that the Code Officer's decision to post the Properties with Notices that Owners must either make adequate repairs or vacate the Properties within 20 days, was "an appropriate response," which the trial court was not permitted to second guess. *Id.* at 7-8.

As to the third issue, Owners argued that the Borough failed to conduct a comprehensive inspection of the Properties because the Code Officer and Borough Engineer failed to inspect the interior of each Property. The trial court reviewed the testimony of the Code Officer and Borough Engineer, who both described the construction of the Building, with each Property having a common wall, and where the floor joists were secured by pockets in the brick, but did not go through the wall. Trial Court 10/13/20 Opinion at 8-9. The Borough Engineer inspected the Property at 155 14th Street, observed the significant collapse, and agreed with the Code Officer that the collapse caused that Property's firewall to be potentially unstable, risking a "progressive collapse" to the remainder of the Properties in the Building. *Id.* at 9. The Borough Engineer also inspected the Property at 137 14th Street, observed the significant fire and water damage, and concluded that the deterioration in this Property "sets up the same risk for collapse that occurred at the 155 14th Street [Property]." *Id.* at 9.

14

Although the Borough Engineer was able to only inspect the interiors of 7 of the 16 Properties in the Building, he opined, within a reasonable degree of engineering certainty, that the conditions inside those Properties, especially the significant deterioration in the Properties at 137 and 155 14th Street, rendered all the Properties in the Building unsafe and at risk of progressive collapse, due to the manner in which the Building was constructed. Trial Court 10/13/20 Opinion at 9, R.R. at 61a-83a. The Borough Engineer testified that it was "not necessary for him to enter each [Property] to form his opinion regarding the possibility of progressive collapse." Trial Court 10/13/20 Opinion at 9. The Borough Engineer also testified that whether the common walls were two bricks or three bricks thick, his opinion of the risk of progressive collapse remained unchanged, again, due to the manner in which the Building was constructed. R.R. at 48a. The trial court further noted that Owners offered no expert testimony from an engineer or an engineer's report in opposition to the Borough Engineer's testimony and Report. Trial Court 10/13/20 Opinion at 9. Based on the testimony presented, the trial court was "satisfied that the Board did not abuse its discretion, commit an error of law, or make findings not supported by substantial evidence regarding the likelihood of progressive collapse of the entire [B]uilding," and affirmed the Board's decision. *Id.* at 9-10. Owners then appealed the trial court's order to this Court.[8]

Owners present the same three questions for our review that they presented to the trial court, and argue that the trial court erred when it found the Notices sufficient under Section 107.2 of the IPMC, when it found the word "shall"

---

[8] "Where, as here, the trial court did not take additional evidence, our review is limited to whether the Board committed an error of law or abused its discretion." *Four Score Property, LLC v. Code Enforcement Appeals Board of the Borough of Gettysburg*, 120 A.3d 1128, 1131 n.4 (Pa. Cmwlth. 2015).

15

in Sections 109.2 and 109.4 of the IPMC did not require the Borough to conduct its own repairs to the unsafe structures, and when it credited the testimony of the Code Officer and Borough Engineer because they did not inspect the interior of each Property in the Building.

As to the first issue, Owners argue, as they did before the trial court, that the Notices failed to comply with Section 107.2(4) of the IPMC because the Borough failed to provide a corrective order allowing Owners a reasonable time to make the necessary repairs. Owners object that they are unable to make improvements to the Property at 155 14th Street, because they do not own that Property. Owners also object to the Borough's attempt to correct its errors in the initial Notices by providing additional information through the Borough Engineer's Report and the Code Officer's follow-up letter.

The Borough responds that the initial Notices complied with Section 107.2(4) because they specified that, within 20 days, "[a]ll decayed, and damaged structural members must be removed, and or replaced, and the structure inspected by the issuing officer." R.R. at 164a. The Borough contends that any perceived deficiencies in the initial Notices were corrected through the Borough Engineer's Report and the Code Officer's follow-up letter, as stipulated to by the parties. The Borough asserts that it provided Owners with the agreed-upon supplemental information on or before November 27, 2019, nearly two months before the Board hearings, during which time Owners took no measures to render their Properties safe. The Borough further notes that Owners failed to obtain an expert report to dispute the opinions of the Code Officer or Borough Engineer.

We discern no error in the Board's determination that the Notices complied with Section 107.2 of the IPMC, because, on their face, they adequately

16

described the violations, corrective actions needed, and a deadline. Further, as the parties agreed, the Borough provided additional information regarding the violations and corrective actions needed through the Code Officer's follow-up letter and the Borough Engineer's Report. Owners, represented by counsel, participated in three Board hearings, during which they heard detailed testimony from the Code Officer and Borough Engineer about the condition of the Properties and the Building, reviewed the Borough Engineer's Report, and had the opportunity to cross-examine these witnesses and to present testimony from their own residential construction expert. Owners could have, but did not, present a report from another engineer to call the Borough Engineer's Report into question. We agree with the trial court that any perceived deficiency in the Notices was corrected by the supplemental notice provided by the Borough, as agreed to by the parties. Further, because Owners participated in multiple Board hearings, they had actual notice of the Building's deficiencies and the corrective actions needed. *See Borough of Parkesburg v. Rzonca* (Pa. Cmwlth., No. 1393 C.D. 2017, filed December 17, 2018), slip op. at 7 (holding that a defect in a notice of a property maintenance code violation "may be cured by actual knowledge of the violation").[9]

      As to the second issue, Owners argue, as they did before the trial court, that Sections 109.2 and 109.4 of the IPMC mandate the Code Officer to order the necessary work to be done, employ the necessary labor and materials, and perform the work required as expeditiously as possible on the Property at 155 14th Street, which was posted as an imminent danger. Owners claim that the plain language of Sections 109.2 and 109.4 of the IPMC, which state that the code official "shall order

---

[9] *See* Pa. R.A.P. 126(b) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. [] Non-precedential decisions . . . may be cited for their persuasive value.").

17

the necessary work to be done" and "shall employ the necessary labor and materials" requires the Borough to repair, at its expense, the unsafe conditions in the Property at 155 14th Street. Owners seek to distinguish our Court's holding in *South End Enterprises, Inc.*, 913 A.2d 354, because that case arose from a mandamus action filed by the property owners, and here, Owners' action arises from an appeal from the Board's decision.

The Borough responds that Sections 109.2 and 109.4 of the IPMC do not require the Borough to conduct or bear the expense of the necessary repairs to the Property at 155 14th Street, because the Code Officer has discretion over what actions must be taken to render the Property temporarily safe. The Borough contends that the language in Sections 109.2 and 109.4 of the IPMC is identical to the emergency repair language this Court analyzed in *South End Enterprises, Inc.*, 913 A.2d at 358, which stated, "[f]or purposes of this [S]ection [109] the code official shall employ the necessary labor and materials to perform the required work as expeditiously as possible."

We discern no error in the Board's determination that the Borough is not required to conduct repairs to the 155 14th Street Property under Sections 109.2 and 109.4 of the IPMC. Although use of the word "shall" in ordinances often suggests a mandatory requirement, it cannot be read to require the Borough to conduct repairs to a dangerous property under Sections 109.2 and 109.4 of the IPMC. Our Court reviewed identical language in *South End Enterprises, Inc.*, 913 A.2d at 359, and stated:

> However, it is impossible to read 'shall' in the context of Section 109 as conveying a peremptory mandate intending to divest the code official of any discretion. To the contrary, [c]ity [c]ouncil invested the code official with a broad grant of discretion to decide how to protect the

18

public from a danger building. In the end, it is the discretion in Section 109, not its creation of a mandate, that makes the exercise of the code official's duties beyond the reach of a mandamus action.

The fact that owners sought to compel the municipality to make repairs in *South End Enterprises, Inc.* through a mandamus action, rather than through a Board appeal, does not distinguish it from the case here, because Section 109 of the IPMC gives the code official discretion to order a range of actions to render a dangerous property temporarily safe. Further, the properties at issue in *South End Enterprises, Inc.*, 913 A.2d at 355, were similarly constructed to the instant Properties and Building at issue here, where the property was "one half of a double home . . . and the two addresses occupy a building constructed as one and divided by an internal wall." As we did in *South End Enterprises, Inc.*, 913 A.2d at 361, we acknowledge Owners' frustration that their Properties are at risk of progressive collapse because of unsafe and dangerous conditions at neighboring Properties, especially the Properties at 137 and 155 14th Street, and that the IPMC does not require the Borough to make repairs. However, we are bound by our holding in *South End Enterprises, Inc.*, and we cannot require the Borough to make repairs to the Properties or the Building.

As to the third issue, Owners argue that the Board and trial court erred in relying on the Code Officer and Borough Engineer's testimony, when they did not enter and inspect the interior of each Property in the Building. Owners also claim that the Borough Engineer's opinion was based on a faulty observation that the interior walls were two bricks thick, and not three bricks thick, as testified to by Owners' expert. The Borough responds that this Court may not substitute its findings for the Board's, citing *Taliaferro v. Darby Township Zoning Hearing*

19

*Board*, 873 A.2d 807 (Pa. Cmwlth. 2005). The Borough contends that the Borough Engineer testified that his opinion of the risk of progressive collapse to the Properties in the Building due to the manner in which it was constructed was unchanged by his inability to inspect each Property or by Owners' expert's observation that the interior wall between the Properties at 143 and 145 14th Street was three bricks thick.

We discern no error in the Board's findings or the trial court's determination that the Borough met its burden to prove that the Properties are unsafe. The Board considered and relied upon the Borough Engineer's testimony and Report, and was not persuaded by Owners' evidence. This Court may not "substitute its interpretation of the evidence" for the Board's. *Taliaferro*, 873 A.2d at 811. The Board "is the sole judge of the credibility of the witnesses and the weight afforded their testimony." *Id.* Assuming the record contains substantial evidence, we are bound by the Board's findings that result from its credibility determinations. *Id.* Here, substantial evidence in the record supports the Board's finding that the Properties are unsafe in violation of Section 107.2 of the IPMC, based on the credited testimony of the Code Officer and Borough Engineer, which Owners failed to rebut with credible evidence.

Accordingly, we affirm the trial court's order.

_____
MICHAEL H. WOJCIK, Judge

20

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: The Appeal of the Borough of    :
Renovo and Code Inspections, Inc.,    :
Finding of 14th Street, Renovo,    :
Pennsylvania    :
   : No. 1352 C.D. 2020
Appeal of: Dawn Pagnotto, Heather    :
Wadsworth Bixler, Teresa Casper,    :
Marlin Horst, Nancy Moriarity,    :
Michael Hand, Brenda Hand, Ryan    :
Mooney, and Janean Mace    :

# **O R D E R**

AND NOW, this 27th day of May, 2022, the Order of the Court of Common Pleas of Clinton County dated October 13, 2020, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge